# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CEJAYE POSPICHAL,**

    **Plaintiff,**

    **v.**                                        **Case No. 21-CV-788-SCD**

**KILOLO KIJAKAZI,**
   *Acting Commissioner of the Social Security Administration,*

    **Defendant.**

---

## DECISION AND ORDER

---

    Cejaye Pospichal applied for social security disability benefits based primarily on cognitive issues, depression, and anxiety. The Commissioner of the Social Security Administration denied the application, and, after a hearing, an administrative law judge found Pospichal not disabled under the Social Security Act. Pospichal seeks judicial review of that decision, arguing that the ALJ erred in evaluating the medical opinion evidence and in assessing the intensity and persistence of her alleged symptoms. I agree that the ALJ reversibly erred in evaluating the medical opinions of the psychological consultative examiner. Accordingly, I will reverse the decision denying Pospichal disability benefits and remand the matter for further proceedings.

## BACKGROUND

    In 2019, Pospichal applied for supplemental security income under Title XVI of the Social Security Act, claiming that she became disabled and unable to work in 2018 due to cognitive issues, depression and anxiety, and pain in her right knee.

## I. Medical Background

Pospichal was born in 1994. R. 181.[1] She attended special education classes in school, beginning at age three for speech and language issues, and later had an individualized education program to address cognitive delays and a specific learning disability. *See* R. 345–70. At age nineteen, Pospichal was reading at a seventh-grade level, performing math at a fourth-grade level, and writing at a sixth-grade level. R. 346–47. She also had a short attention span and was easily distracted. After graduating high school, Pospichal enrolled in a transitional program for young adults that focused on life skills, vocational skills, and consumer skills. *See* R. 325–44. She had an IEP for her learning disability during her two years in the program.

From 2014 to 2018, Pospichal received services from a state vocational rehabilitation program for individualities with disabilities. *See* R. 374–521. The program provided vocational training and helped Pospichal obtain part-time employment, first at McDonald's and later at a coffee shop, though neither job lasted very long. The program required participants to spend at least three hours each week searching for a job. In June 2017, Pospichal told her caseworker that she felt she was "getting nowhere with employment." R. 405. She continued to look for work throughout 2017, interviewing for at least one position, but she also failed to fill out several other job applications. R. 402. In January 2018, a caseworker denied Pospichal's request to be exempt from the job-search requirement so she could clean her apartment. R. 401. The following month, Pospichal told her caseworker that she was frustrated and stressed about searching for jobs without any leads. The caseworker encouraged Pospichal to keep with it but also explained that she didn't want to push the job

---

[1] The transcript is filed on the docket at ECF No. 10-1 to 10-2.

search if it hurt Pospichal more than it helped. In April 2018, Pospichal and her caseworker agreed to close her file given Pospichal's failure to comply with the job-search requirement and desire to focus on her health and disability application instead. R. 400.

That same month, a friend got Pospichal a job working part time at McDonald's. *See* R. 47–50, 193, 196, 699, 704. It didn't go well. Pospichal struggled with the drive-thru, frequently asked customers to repeat their orders, and couldn't count change accurately. Also, one of her managers verbally harassed her, calling her "retarded" and "useless." R. 273. Pospichal quit in September 2018 because she couldn't handle the stress of working—"it was hell." *See* R. 49, 191–92, 699. She hasn't worked since, though she did apply for jobs at Subway, a pizza place, and an art studio. R. 50–51.

Over the years, Pospichal's health providers have documented several mental health impairments, including a learning disability, cognitive impairment, post-traumatic stress disorder, anxiety, depression, and attention-deficit/hyperactivity disorder. *See, e.g.*, R. 524, 526, 531, 562, 572–73, 575–76, 623–26, 771–72, 850–51, 859, 874, 886. Pospichal, however, has received minimal treatment for those impairments. She was prescribed ADHD medication as a teenager but stopped taking it because it "messed up" her heart rate. *See* R. 530, 532. In February 2019, Pospichal presented to a nurse practitioner because she needed paperwork to support her disability application. R. 623. She told the nurse that her learning disability made it difficult for her to work and maintain a job and that she wasn't taking any medications at the time. The nurse assessed mild cognitive disorder, depression, and anxiety and noted that Pospichal's depression and anxiety had been stable since she stopped working. R. 625–26. At a follow-up appointment a few months later, Pospichal reported a dysphoric mood, sleep disturbance, nervousness, and anxiety. R. 638. On examination, she exhibited

normal judgment; an anxious and depressed mood; rapid and/or pressured, delayed, and tangential speech; slow, child-like capabilities; paranoid thought content; normal cognition and memory; and no suicidal thoughts. Pospichal told the nurse that she was not interested in starting any medication, her depression and anxiety were stable, and her cat really helped with her depression symptoms. R. 639.

On April 26, 2019, Pospichal saw David Nichols, PhD, for a psychological examination in connection with her disability application. *See* R. 697–701. She reported difficulty handling stress, breaking down easily, having PTSD from a car accident, experiencing auditory hallucinations, difficulty trusting others, having cognitive delay, experiencing depressive symptoms, and having difficulty focusing and staying on task. R. 697–98. On exam, she was appropriately dressed and groomed, had coherent and goal-directed speech, presented no evidence of abnormal psychomotor behavior, was cooperative, exhibited good eye contact, related appropriately, demonstrated appropriate affect and normal mood, was oriented, and exhibited fair insight and judgment R. 700. Her cognitive skills were "relatively intact," but she had below average immediate auditory memory and, "she went very slowly and became increasingly stressed" when reciting serial threes to forty. *Id.*

Dr. Nichols completed a report of his findings. He indicated that Pospichal appeared capable of managing her own benefits; however, given her low intellectual functioning, "it would be prudent for her to have a payee." *Id.* Dr. Nichols also indicated that Pospichal appeared capable of understanding and remembering instructions, but she "would likely have difficulty carrying them out on a consistent basis because of psychological problems." *Id.* Finally, Dr. Nichols indicated that Pospichal appeared capable of relating appropriately to supervisors and coworkers. He diagnosed PTSD, major depression with psychotic features,

4

ADHD, and panic disorder and noted he needed to rule out intellectual disability. R. 700–01.

Pospichal had just a few other medical appointments in 2019. In August, she presented with a dysphoric mood, sleep disturbance, nervousness, and anxiety. R. 885. The nurse again noted that Pospichal's depression and anxiety were stable and that Pospichal didn't want to start any medications. R. 886. In November, Pospichal requested a psychiatric referral for further evaluation and management. R. 772. Exam notes indicate she was well dressed; well groomed; had a normal affect, speech, and language; and was cooperative. R. 774. The provider referred her to behavioral health for counseling and to a psychiatrist for medication management. R. 772.

Pospichal has also complained at times about physical issues, including headaches and pain in her right knee. *See, e.g.*, R. 542, 546, 649, 703, 771–72. In April 2019, she saw Kurt L. Reintjes, MD, for an internal medicine examination in connection with her disability application. *See* R. 703–05. Dr. Reintjes noted that it was "evident very quickly that [Pospichal had] some cognitive limitations." R. 703. After examining Pospichal, he assessed cognitive limitations, right knee pain, and obesity. R. 704–05.

## II.    Procedural Background

Pospichal applied for disability benefits in February 2019. *See* R. 181–85, 190–96. She alleged disability beginning on her last day of work—September 1, 2018—due to a host of medical issues: right knee pain, lower abdominal pain, constipation, ADHD, depression, hyperandrogenism, mild cognitive disorder, reactive airway disease, hypothyroidism, and anxiety. Pospichal asserted that her impairments significantly affected her ability to lift, squat, bend, stand, reach, walk, kneel, talk, climb stairs, remember, complete tasks, understand, follow directions, and get along with others. *See* R. 199–207. She also asserted significant

5

limitations in her daily activities. Pospichal reported being mentally slower than her peers, getting yelled at frequently for being slow, having little control of her emotions, and breaking down easily. She also reported being able to pay attention for only a few minutes, not finishing what she starts, having difficulty following spoken instructions, not handling stress well, and having difficulty with changes in routine.

The state agency charged with reviewing the application on behalf of the Social Security Administration denied the claim initially and upon Pospichal's request for reconsideration. *See* R. 69–101. The psychologists who reviewed the medical records found that Pospichal had severe but not disabling PTSD, depression, and anxiety. R. 75–77, 80–82, 91–92, 96–98. Specifically, they found that Pospichal had a moderate limitation in each of the four areas of mental functioning used in a work setting: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.[2] The reviewing psychologists found that Pospichal would be able to focus to complete a simple task; however, due to her mental health diagnoses, she would have difficulty with more complex tasks. R. 81, 97.

After the state-agency denial, an ALJ employed by the Social Security Administration held an evidentiary hearing on Pospichal's application. *See* R. 39–68. Pospichal testified at the hearing. *See* R. 44–63. She told the ALJ that she graduated from high school but attended only one regular education class, and that was with an aide; all her other courses were special ed. R. 46. She indicated that she was bullied as a child by other kids and her own mother. R. 61. Pospichal said she last worked part time at McDonald's for about five months in 2018.

---

[2] These four areas of mental functioning are known as the "paragraph B" criteria. The Social Security Administration measures the paragraph B criteria on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).

R. 48–50. She struggled as a cashier and with the drive-through and often went to the bathroom to cry. She said she stopped working with the state vocational program because they couldn't find her a job. R. 50.

Pospichal told the ALJ that her biggest challenge in going back to work was her anxiety. R. 51. She said she broke down easily (especially when getting yelled at), stuttered when nervous, and had difficulty carrying out instructions. R. 51, 55, 59. Pospichal also claimed to have a friend that no one else can see and to not "see the world as reality." R. 60–61. At the time, she wasn't receiving any treatment for her mental health symptoms, though she did have an appointment scheduled for the following month. R. 58. Pospichal indicated that she used to take medication for her ADHD and depression, but it made her heart "go slow, and then fast." *Id.* She's been scared to take medications since then. R. 58–59.

Pospichal told the ALJ she was living by herself in a subsidized apartment. R. 44. She reported receiving a lot of help from her father, who lived about twenty minutes away. R. 45–46, 54. Pospichal said she struggled living alone. She cooked easy meals but sometimes burned rice or pasta. R. 59–60. She also felt overwhelmed trying to keep her apartment clean and often just went in her room to hide. R. 54. Pospichal told the ALJ that she'd like to have a roommate that would act smarter than her, help her, and not yell at her too much. R. 57.

Pospichal also testified about her daily activities. She didn't have a driver's license and was scared to drive. R. 46. She reported passing the written portion of the test—her father helped her understand the "big words" by using lots of pictures while studying—but failing the driving portion. R. 47, 51–52. Pospichal said she often walked to the library to watch videos on the computer, played video games at home, and socialized with a few close friends at least once a week. R. 53, 57–58. But she mostly spent her time hiding in her apartment and

7

reading anime "because there's pictures." R. 59. Pospichal said she needed to have someone with her when grocery shopping, otherwise it would take forever, and she'd buy mostly candy. R. 62. She had her own checking account but needed help paying bills. R. 61–62.

A vocational expert also testified at the hearing. *See* R. 63–67. The vocational expert testified that a hypothetical person with Pospichal's vocational profile (i.e., twenty-four years old on her application date, a high school education, and limited work experience) could work as a laundry sorter, housekeeper, and small products assembler (but no assembly line) if she were limited to a restricted range of light work. R. 64–65. According to the vocational expert, no jobs would be available if the person required job coaching and/or daily redirection throughout the workday. R. 66. Likewise, the person would not be able to work if she were unable to consistently carry out instructions. R. 67.

In March 2020, the ALJ issued a written decision finding that Pospichal was not disabled. *See* R. 16–37. The ALJ considered the disability application under 20 C.F.R. § 416.920(a)(4), which sets forth a five-step process for evaluating disability benefits claims. At step one, the ALJ determined that Pospichal had not engaged in substantial gainful activity since the date she applied for benefits (February 28, 2019). R. 22. The ALJ determined at step two that Pospichal had five severe impairments: borderline intellectual functioning/learning disability, PTSD, depression, a right knee injury, and obesity. R. 22–23. At step three, the ALJ determined that Pospichal did not have an impairment, or a combination of impairments, that met or medically equaled the severity of a presumptively disabling impairment listed in the social security regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., "the listings"). R. 23–25. The ALJ explicitly considered Listings 12.04 (depression), 12.11

8

(neurodevelopmental disorders), and 12.15 (PTSD) but found that Pospichal had only a moderate limitation in each of the paragraph B criteria.

The ALJ next assessed Pospichal's residual functional capacity—that is, her maximum capabilities despite her limitations, *see* 20 C.F.R. § 416.945(a). The ALJ determined that Pospichal could work at the light exertional level with several non-exertional limitations. R. 25. With respect to mental health, the ALJ limited Pospichal to simple, routine, and repetitive tasks, which the ALJ defined as jobs with a specific vocational preparation and reasoning level no more than two. The ALJ also limited Pospichal to low-stress work (defined as jobs with no inflexible or fast-paced production requirements, involving simple decision making, and no more than occasional changes in the work setting), jobs where tasks could be performed independently, and jobs involving no more than occasional interaction with supervisors, coworkers, and the public.

In assessing that RFC, the ALJ considered Pospichal's subjective allegations about her impairments, the medical evidence, the prior administrative medical findings, and the medical opinion evidence. *See* R. 25–31. The ALJ determined that the degree of mental health limitation Pospichal alleged was not supported by the objective medical evidence. *See* R. 29. The ALJ noted that Pospichal had not been hospitalized or received inpatient treatment for psychiatric symptoms, had not received any psychiatric treatment or mental health counseling since her alleged onset of disability, and had not taken any psychiatric medications since her alleged onset date. Rather, according to the ALJ, Pospichal's treatment had been very limited, and she had refused psychiatric medication. The ALJ also noted that mental status examination findings did not support debilitating psychiatric symptoms. Finally, the ALJ indicated that Pospichal "had clear issues with motivation to obtain employment" when

working with the state vocational program and that her case was closed "due to an unwillingness to put in job search requirements." R. 29 (citing Exhibits 6F/27–28).

The ALJ also determined that the degree of limitation Pospichal alleged was not supported by the opinion evidence in the record. *See* R. 30. The ALJ first considered the prior administrative medical findings of the reviewing state-agency psychologists, who found that Pospichal had only a moderate limitation in each of the paragraph B criteria; was able to remember, follow, perform, and understand simple, two- to three-step instructions and focus sufficiently to complete simple tasks; and would have difficulty with more complex tasks. R. 30 (citing Exhibits 2A; 3A). The ALJ concluded that those findings were "generally persuasive" because they were generally consistent with and supported by the overall record. R. 30.

The ALJ also considered the opinions of Dr. Nichols, the psychological consultative examiner. According to the ALJ, Dr. Nichols opined that Pospichal appeared capable of managing her own benefits (though a payee would be prudent), appeared capable of understanding and remembering instructions, appeared capable of relating appropriately to supervisors and coworkers, and likely would have difficulty carrying out instructions on a consistent basis because of psychological problems. R. 30 (citing Exhibit 14F/7). The ALJ determined that Dr. Nichols' opinions were "somewhat persuasive" because they were "largely consistent with and supported by the overall evidence of record including minimal care, treatment or complaints of psychiatric symptoms." R. 30. More specifically, the ALJ determined that Dr. Nichols' opinions about understanding, memory, and interaction limitations were "largely supported by the overall evidence including reports of good cooperation at examinations and [Pospichal's] ability to follow treatment recommendations."

10

*Id.* The ALJ explained, however, that he limited Pospichal "to only simple tasks, occasional interaction, etc. based on the overall evidence including [Pospichal's] subjective reports of difficulty understanding instructions and 'breaking down' at times when under pressure." R. 30 (citing Hearing Testimony).

Finally, the ALJ considered the opinion of Dr. Reintjes (the medical consultative examiner) that Pospichal had some cognitive limitations. R. 30 (citing Exhibit 15F/1–2). The ALJ found Dr. Reintjes' opinion "unpersuasive" because it was "not clear as to what extent the cognitive limitations affect[ed] [Pospichal's] ability to perform work." R. 30. According to the ALJ, Dr. Nichols' opinion was more persuasive, as it was "based on a more comprehensive psychological examination and [Nichols'] experience treating psychological symptoms/impairments." *Id.*

The ALJ then continued with the sequential evaluation process. At step four, the ALJ determined that Pospichal did not have any past relevant work. R. 31. The ALJ determined at step five that there were jobs that existed in significant numbers in the national economy that Pospichal could perform. R. 31–33. Based on that finding, the ALJ determined that Pospichal had not been disabled since she applied for benefits. R. 33.

The Appeals Council denied Pospichal's request for review, *see* R. 5–11, making the ALJ's decision a final decision of the Commissioner of the Social Security Administration, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

In June 2021, Pospichal filed this action seeking judicial review of the Commissioner's decision denying her claim for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). *See* ECF No. 1. The matter was reassigned to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos.

4, 5, 6. Pospichal filed a brief in support of her disability claim, ECF No. 13; Kilolo Kijakazi,

Acting Commissioner of the Social Security Administration, filed a brief in support of the

ALJ's decision, ECF No. 21; and Pospichal filed a reply brief, ECF No. 22.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed

by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*,

623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have

the power to affirm, reverse, or modify the Commissioner's decision, with or without

remanding the matter for a rehearing. A reviewing court will reverse the Commissioner's

decision "only if the ALJ based the denial of benefits on incorrect legal standards or less than

substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*,

227 F.3d 863, 869 (7th Cir. 2000)).

"Substantial evidence is not a demanding requirement. It means 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Martin*,

950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "When reviewing

the record, this court may not re-weigh the evidence or substitute its judgment for that of the

ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v.

Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, I must determine whether the ALJ built

an "accurate and logical bridge between the evidence and the result to afford the claimant

meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834,

837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v.

Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

12

## DISCUSSION

Pospichal contends the ALJ erred in evaluating the medial opinion evidence and in assessing the intensity and persistence of her alleged symptoms.

## I.     The ALJ Reversibly Erred in Evaluating the Medical Opinion Evidence

Pospichal first argues that the ALJ erred in not evaluating all Dr. Nichols' medical opinions, as required by 20 C.F.R. § 416.920c. Dr. Nichols indicated that Pospichal appeared capable of managing her own benefits, understanding and remembering instructions, and relating appropriately to supervisors and coworkers. Dr. Nichols also indicated that it would be prudent for Pospichal to have a payee given her low intellectual functioning and that Pospichal likely would have difficulty carrying out instructions on a consistent basis because of psychological problems. The ALJ mentioned each of Dr. Nichols' statements in his decision. However, in finding Dr. Nichols' opinions somewhat persuasive, the ALJ explicitly discussed only the opinions about understanding instructions, remembering instructions, and relating to others; he did not evaluate the statement about carrying out instructions.

Kijakazi argues that the ALJ didn't need to address Dr. Nichols' statement about Pospichal's difficulties carrying out instructions because the statement is not a "medical opinion" under social security regulations. "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in several abilities, including the ability to carry out instructions. 20 C.F.R. § 416.913(a)(2)(i)(B). Dr. Nichols, a licensed psychologist paid by the Social Security Administration to examine Pospichal in connection with her disability claim, clearly is a "medical source." *See* 20 C.F.R. § 416.902(i) ("*Medical source* means an individual who is licensed as a healthcare worker by a State and

13

working within the scope of practice permitted under State or Federal law."). And Dr. Nichols' statement about Pospichal's ability to carry out instructions is a statement about what she can still do despite her impairments.

Kijakazi provides no authority to support her argument that Dr. Nichols' use of the term "likely" disqualifies the statement as a medical opinion. After all, Pospichal was not working at the time, so Dr. Nichols had to predict how she'd fare in a work setting. Moreover, it appears the ALJ treated the statement as a medical opinion notwithstanding that Dr. Nichols expressed it in likelihoods. *See* R. 30 ("The psychological consultative examiner *further opined* that the claimant . . . would likely have difficulty carrying out instructions on a consistent basis because of psychological problems.") (emphasis added).

Social security regulations required the ALJ to articulate in his decision "how persuasive [he] [found] all of the medical opinions . . . in [Pospichal's] case record." 20 C.F.R. § 416.920c(b). The regulations mandate only source-level articulation. *See* 20 C.F.R. § 416.920c(b)(1). In other words, an ALJ may explain how he considered multiple medical opinions from the same source "together in a single analysis." *Id.* Nothing in that regulatory section, however, permits an ALJ to ignore a portion of a medical opinion that is directly relevant to determining a claimant's RFC and that arguably suggests a disability. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability."). And the ALJ still must build an accurate and logical bridge between the evidence and her conclusion, whether or not the statement satisfies the regulatory definition of a medical opinion. *See Gary R. v. Kijakazi*, No. 20 C 6109, 2022 WL 4607581, 2022 U.S. Dist. LEXIS 178839, at *38 (N.D. Ill. Sept. 30, 2022) ("While the ALJ was not

14

required to march through each opined limitation to explain whether it was consistent with or supported by the record, nothing in the revised regulations overturns the Seventh Circuit's longstanding requirement that the ALJ build a logical bridge between the record and her conclusion.").

Kijakazi appears to argue that any error in evaluating Dr. Nichols' opinions was harmless. According to Kijakazi, Dr. Nichols' opinion about Pospichal likely having difficulty carrying out instructions was too vague to support a specific functional limitation. Kijakazi also insists that the mental RFC assessed by the ALJ was more restrictive than Dr. Nichols' opinion. Finally, Kijakazi contends that the reviewing psychologists' findings support not only the assessed mental RFC, but also explain that Dr. Nichols' opinion was consistent with finding Pospichal capable of unskilled work.

The Seventh Circuit has repeatedly held that administrative error like the one here is subject to harmless-error review and that remand is not required if the reviewing court "can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707–08 (7th Cir. 2013) (citations omitted). "[T]he harmless error standard is not . . . an exercise in rationalizing the ALJ's decision and substituting [the reviewing court's] own hypothetical explanations for the ALJ's inadequate articulation." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Rather, the question for a reviewing court "is now prospective—can [I] say with great confidence what the ALJ would do on remand—rather than retrospective." *Id.*

Based on my review of the record, I cannot say with great confidence that the ALJ would reach the same result on remand. First, at the hearing level, it is the duty of the ALJ—not a medical source—to assess a claimant's RFC. *See* 20 C.F.R. § 416.946(c). The ALJ here

15

did not reject Dr. Nichols' opinions on vagueness grounds, and there's no reason to believe the lack of specificity impeded his ability to fashion an RFC restriction to account for Pospichal's difficulties carrying out instructions consistently. Indeed, the vocational expert did not seek clarification when Pospichal's representative asked whether being unable to consistently carry out instructions would preclude all work. *See* R. 67.

Second, Kijakazi fails to explain *how* the assessed mental RFC is more restrictive than Dr. Nichols' opinion. The ALJ limited Pospichal to simple, routine, and repetitive tasks; low-stress work; jobs where tasks can be performed independently; and jobs involving no more than occasional interaction with supervisors, coworkers, and the public. Kijakazi criticizes Dr. Nichols for not limiting Pospichal to simple or low-stress work or assessing any paced-based restrictions. But he didn't need to. The vocational expert testified that a hypothetical individual with Pospichal's vocational profile would not be able to work if she were unable to consistently carry out instructions due to psychological problems. *See* R. 67. The vocational expert did not qualify his testimony based on the complexity of the instructions involved, the level of work stress, or the pace of the work. An assessed mental RFC is not more restrictive than an opinion that would result in a finding of disability, if credited.

Third, the reviewing psychologists' findings do not demonstrate that the ALJ's mental RFC would remain unchanged on remand. The reviewing psychologists found Dr. Nichols' medical opinion persuasive because it was supported by his own exam findings and consistent with Pospichal's ability to do unskilled work. *See* R. 78, 94. Although they accurately recited Dr. Nichols' opinions, *see* R. 72, 88, the reviewing psychologists—like the ALJ—appear to have missed the significance of Nichols' opinion about Pospichal's difficulties carrying out instructions. Moreover, the reviewing psychologists found that Pospichal did not suffer from

16

a severe neurodevelopmental or intellectual disorder. *See* R. 75, 91. In contrast, the ALJ determined at step two that Pospichal's borderline intellectual functioning/learning disability more than minimally affected her ability to perform basic work activities. *See* R. 22–23. Thus, the reviewing psychologists' findings are not consistent with all Dr. Nichols' opinions, and it's unclear how the ALJ would reconcile those conflicting findings.

Fourth, Dr. Nichols' opined limitation appears supported by his own findings and consistent with other evidence in the record. *See* 20 C.F.R. § 416.920c(a), (b)(2) (explaining that consistency and supportability are the two most important factors when considering the persuasiveness of a medical opinion). Pospichal exhibited below average immediate auditory memory on exam, and "she went very slowly and became increasingly stressed" when reciting serial threes to forty. R. 700. Moreover, Dr. Reintjes (the medical consultative examiner) noted that it was "evident very quickly" after talking with Pospichal that she had "some cognitive limitations." R. 703–04. Pospichal has also frequently complained about cognitive issues, including difficulty focusing, remembering, completing work tasks, and carrying out instructions. *See* R. 59, 191, 196, 199–207, 717, 827, 900. Testing has revealed processing delays. *See* R. 352, 354, 378. And providers have assessed a cognitive impairment and a learning disability. *See* R. 772, 807, 810, 812, 886.

Finally, it should be clear that the omission isn't a mere quibble. After all, it's the *carrying out* of instructions that is really the most important part of any instruction. If someone who can understand and remember instructions is nevertheless unable or unwilling to carry them out, that individual will be unemployable, as the VE recognized.

In sum, the ALJ reversibly erred in evaluating the medical opinion evidence. The ALJ did not evaluate Dr. Nichols' statement that Pospichal would likely have difficulty carrying

17

out instructions on a consistent basis, connect that evidence to the RFC assessment, or explain why he rejected that opined limitation. This mistake was not harmless, as the opined limitation appears supported by Dr. Nichols' own exam findings and consistent with other evidence in the record, and the vocational expert testified that a person wouldn't be able to work if she couldn't carry out instructions on a consistent basis.

## II. On Remand, The ALJ Should Reassess the Intensity and Persistence of Pospichal's Alleged Symptoms

Pospichal also argues that the ALJ erred in assessing the intensity and persistence of her alleged intellectual, cognitive, and learning limitations. Pospichal sought disability benefits based in part on her diagnosed cognitive disorder. *See* R. 191. In her disability and function reports, Pospichal alleged that her cognitive disorder limited her ability to complete work tasks. *See* R. 190–96, 199–207. She reported that she was slower mentally than her peers, she frequently got yelled at for her slowness when working, she had difficulty controlling her emotions, she broke down easily (especially when stressed), she struggled following instructions, and she did not handle stress well. Likewise, Pospichal testified at the administrative hearing that she needed significant help to pass the written portion of her driver's test, she struggled keeping up when working the drive-through or the register at McDonald's, she needed help with grocery shopping and paying bills, and she wished she had a roommate who was smarter than she was. *See* R. 44–63.

The ALJ considered Pospichal's allegations of disabling cognitive abilities in his decision. At step two, he determined that Pospichal's borderline intellectual functioning/learning disability was a severe impairment. R. 22–23. He also included several mental restrictions in the RFC assessment. R. 25. When assessing the mental RFC, the ALJ noted that Pospichal had been assessed with a specific learning disability/borderline

18

intellectual functioning; had an IEP while in school; was placed in a transitional program after high school focusing on life, vocational, and consumer skills; and participated in a state vocational rehabilitation program for several years after high school. R. 26 (citing Exhibits 3F/1–20; 4F/1–26; 6F/1–148).

The ALJ nevertheless determined that the degree of Pospichal's alleged mental health symptoms was not supported by the objective medical evidence. *See* R. 29. As support, the ALJ correctly noted the lack of treatment in the record, and Pospichal's refusal of psychiatric medications. Most of the remaining reasons the ALJ provided, however, appear to pertain to Pospichal's other mental impairments. For example, the ALJ noted that Pospichal had never been hospitalized or received inpatient treatment for psychiatric symptoms. The ALJ also noted that Pospichal appeared able to manage the voices she reported hearing. Those two observations do not account for her alleged intellectual, cognitive, and learning difficulties.

Moreover, the ALJ ignored important context when discussing why Pospichal stopped working with the vocational program. The ALJ suggested that Pospichal was unmotivated to find a job and unwilling to comply with the program's job-search requirement of three hours per week. It's true that Pospichal's file was closed after several years in the program because at the time she didn't feel she could keep up with that requirement. *See* R. 374–521. But that decision was made in consultation with her caseworker, who indicated she didn't want to push searching for a job when it appeared to be doing more harm than good. *See* R. 400–06. Pospichal had been complaining for months about how stressful it was searching for a job and not obtaining any promising leads. So she wasn't a completely unmotivated or unwilling participant. Also, the ALJ failed to mention that Pospichal found a job on her own shortly after leaving the program and that she continued looking for work after quitting that job due

19

to stress and emotional abuse by a manager. *See* R. 50–51. A careful review of the entire record therefore suggests the ALJ's inference about Pospichal not wanting to work is inaccurate.

The ALJ also only minimally considered Pospichal's educational records. The Social Security Administration has explained that such records are valuable when evaluating disability claims filed by young adults like Pospichal, especially given the lack of other treatment notes in the record. *See* Social Security Ruling 11-2p, Policy Interpretation Ruling, Titles II and XVI: Documenting and Evaluating Disability in Young Adults, 2011 WL 4055665, 2011 SSR LEXIS 2, at *10–16 (Sept. 12, 2011). Although somewhat dated, the educational records in this case show that Pospichal was considerably behind her peers intellectually and, while she phased out of the IEP for her cognitive impairment, she continued to have processing delays and to receive specialized services for a learning disability. *See* R. 325–70. Providers also assessed a cognitive impairment during the relevant period. *See, e.g.*, R. 623–25, 636, 772, 886. All the ALJ said about Pospichal's educational records was that she had an IEP and a history of special education due to a specific learning disability. *See* R. 23, R. 26 (citing Exhibits 3F/1–20; 4F/1–26).

On remand, the ALJ should reassess the intensity and persistence of Pospichal's alleged intellectual, cognitive, and learning limitations. The ALJ provided several apparently valid reasons to support his assessment of Pospichal's subjective allegations, but his other reasons either focused exclusively on Pospichal's other mental impairments or ignored important context. Also, proper consideration of Dr. Nichols' opinions may impact the ALJ's subjective-symptom evaluation.

**CONCLUSION**

For all the foregoing reasons, I find that the ALJ committed reversible error in evaluating the medical opinions of Dr. Nichols. Thus, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** this action to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. On remand, the Commissioner should also address Pospichal's other claimed error regarding her subjective allegations of disabling symptoms and limitations. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 23rd day of February, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge